UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MALIBU MEDIA, LLC,

  Plaintiff,

v.

ROBERTO ROLDAN,

  Defendant.

Civil Case No. 8:13-cv-03007-JSM-TBM

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff, MALIBU MEDIA, LLC, responds to Defendant's First Set of Interrogatories served October 30, 2014, as follows:

### STATEMENT OF WILLINGNESS TO COOPERATE

Counsel for Plaintiff is prepared to discuss with counsel for Defendant the objections set forth below for the purpose of resolving any disputes that may arise over the responses to the interrogatories without the need for intervention by the Court.

### PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

1. Please identify each individual who prepared or assisted in the preparation of Plaintiff's responses to these Interrogatories.

**Response to Interrogatory No. 1:** Colette Field is the only person who answered these interrogatories. Mrs. Field is a Co-Owner of Plaintiff. Colette Field can be reached through Plaintiff's counsel of record.

2. Identify, as "identify" is defined above, each and every individual and entity who maintains or manages, the website X-Art.com.

**Response to Interrogatory No. 2:** Brigham and Colette Field are Co-Owners of Malibu Media, LLC and in their capacity are responsible for maintaining and managing the website X-Art.com. Brigham and Colette Field can be reached through Plaintiff's counsel of record

3. For each of the work, kindly identify the exact date and time that it was first upload onto x-art.com or xart.com and the individual who performed the upload?

**Response to Interrogatory No. 3:** See Exhibit B to Plaintiff's Complaint, wherein Plaintiff lists the dates of first publication for all copyrighted works at issue in this case. In their capacity as Co-Owners of Malibu Media, LLC, Brigham and Colette Field are responsible for maintaining, managing, and uploading the works on the website X-Art.com.

4. Were any of the works ever uploaded onto any website or internet site other than x-art.com or x-art.com? If so, please, for each work, list any and all websites, FTP sites, or other site onto which it was uploaded; the date and time of each upload; and the identity of the individual who did the upload.

**Response to Interrogatory No. 4:** Plaintiff has never authorized the uploading of any of the works at issue in this case to any website aside from X-Art.com.

5. After each work is uploaded onto any of the internet sites listed in Interrogatory No. 2 or 3 above, is the work available for immediate viewing by a member of the website? If not, how long after the work is uploaded is it available for viewing by a member?

**Response to Interrogatory No. 5:** The copyrighted works at issue in this case are published on X-Art.com along with other copyrighted works owned by Plaintiff. Once a work is uploaded to X-Art.com, it is immediately available for viewing on X-Art.com by X-Art's paid subscribers.

6. Whether or not doing so would violate or abide by any membership agreement, is it possible for a member to actually download any of the works from x-art.com or xart.com? If so, how is such a work available for such download?

**Response to Interrogatory No. 6:** Plaintiff operates a website, the domain for which is X-Art.com. The copyrighted works at issue in this case are published on X-Art.com along with other copyrighted works owned by Plaintiff. Paying subscribers are granted a username and password to the X-Art.com website which provides access to the works. As part of the Terms of Use, subscribers agree not to share, publish, post to another website or otherwise allow access to their username and/or password to any other individual or party. Subscribers of the website are granted a single copy license to download each work for their personal, private and non-commercial use only. Therefore, only paying subscribers have authorization to view and download the copyrighted works. To legally download Plaintiff's works, an individual must be a paying member, select the video desired, select and right-click on the link for a specific file type and resolution and then click 'Save... As...'.

7. For each work, please identify each member who accessed that work on x-art.com or xart.com, from that work's "Date of First Publication' through the "Most Recent Hit" date, as

3

those dates are indicated in Exhibit B to the Amended Complaint, as well as the time and date of access.

**Response to Interrogatory No. 7:** This information does not exist. Regardless, Plaintiff objects to this interrogatory on the basis that it is harassing and seeks the disclosure of highly confidential trade secret information.

8. Please list any and all dates and times in which IPP International UG "connected" with Defendant's IP address, as you allege in Paragraph 22 of the Amended Complaint (Doc. 8).

**Response to Interrogatory No. 8:** Pursuant to Fed. R. Civ. P. 33(d) since the answer to this interrogatory may be determined by examining the MySQL Log File and the burden of deriving or ascertaining this answer will be substantially the same for either party, the Plaintiff may answer by specifying the records that must be reviewed and giving the Defendant a reasonable opportunity to examine such records. Therefore, Plaintiff will produce a copy of the MySQL Log File which will list each time Defendant's IP Address connected to Excipio's servers and transmitted a piece of any of Plaintiff's copyrighted works at issue in this case.

9. Are you able to identify or determine the exact date and time when each "Title," as listed in Paragraphs 32, 34, 36, and 38 of the Amended Complaint (Doc. 8) was downloaded by IP address 96.58.134.12? If so, for each such title, please do so.

**Response to Interrogatory No. 9:** Plaintiff does not have sufficient information in its possession, custody or control to answer this interrogatory.

10. Please list and identify any and all usernames, clientnames, pseudonyms, and/or network names associated with IP address 96.58.134.12 that IPP's software logged during the TCP/IP connection between IPP International UG and IP address 96.58.134.12, as stated in paragraphs 22 and 24 of the Amended Complaint (Doc. 8).

**Response to Interrogatory No. 10:** Plaintiff does not have sufficient information in its possession, custody or control to answer this interrogatory.

11. For each work, please identify, as best as possible, the initial file-provider. If said individual's name is unknown, provide the IP address, username, clientname, pseudonym, and/or network name, and whatever other identifying information you have.

**Response to Interrogatory No. 11:** Plaintiff does not have sufficient information in its possession, custody or control to answer this interrogatory.

12. Please identify the exact date(s) and time(s) when the alleged downloads (a) began and (b) ended.

**Response to Interrogatory No. 12:** Plaintiff does not have sufficient information in its possession, custody or control to answer this interrogatory.

13. Please Identify each and every peer in the Swarm, stating for each: (a) IP address; (b) User ID or other identifier; and (c) legal name, address, and telephone number, if known; and (d) the dates and times each said peer entered and left the swarm. ("Peer" as used herein is used as it was in your amended complaint).

**Response to Interrogatory No. 13:** Plaintiff does not have sufficient information in its possession, custody or control to answer this interrogatory.

14. Regarding the Torrent Files, please identify: (a) the size of the file; (b) the number of "pieces" the file was broken into; (c) the size of each piece, and (c) the cryptographic "hash".

**Response to Interrogatory No. 14:** Pursuant to Fed. R. Civ. P. 33(d) since the answer to this interrogatory may be determined by examining the .torrent file and the burden of deriving or ascertaining this answer will be substantially the same for either party, the Plaintiff may answer by specifying the records that must be reviewed and giving the Defendant a reasonable opportunity to examine such records. Therefore, Plaintiff will produce a copy of the .torrent file which speaks for itself.

15. Did Defendant download the entire Torrent Files to completion? If your answer is "yes," please explain any and all facts on which you rely to arrive at that conclusion.

**Response to Interrogatory No. 15:** The purpose of using the BitTorrent Protocol is to obtain a complete and useable copy of a computer file. In this case, the files are movies. Plaintiff's evidence indicated that Defendant downloaded multiple movies correlating to different .torrent files. Here, it simply does not make any sense that Defendant would only download pieces of a movie file instead of the whole file. Indeed, doing so would be inconsistent with the purpose of BitTorrent. Defendant is a habitual BitTorrent user and therefore presumably knows how to use it successfully for its intended purpose of obtaining complete files.

16. In publishing or producing the Works that you allege Defendant infringed, were any devices, software, or mechanisms used to diminish infringing activity, such as copy protections, anti-piracy software protection, or piracy protection. If so, describe them in detail.

**Response to Interrogatory No. 16:** Plaintiff has valid copyright registrations for all of the works at issue in this case. Plaintiff also sends hundreds, if not thousands, of DMCA notices a month in an effort to stop infringement of its works. Further, Plaintiff files copyright infringement suits against the most egregious of infringers across the country.

17. Please list, describe, explain, and identify any and all information, data, and statements you relied upon to determine that Defendant was the infringer.

**Response to Interrogatory No. 17:** See generally the Amended Complaint wherein Plaintiff explained in detail the information, data, and statements relied upon to determine that Defendant participated in a BitTorrent swarm.

18. Do you have any evidence, other than an IP Address to prove that Defendant, Roberto Roldan, and no one else committed the infringements alleged in the amended complaint (Doc. 8)? If so, please identify, with particularity and to completion, any and all such evidence.

**Response to Interrogatory No. 17:** Plaintiff objects on the basis that this question is ambiguous. Notwithstanding the foregoing objection and without waiving same, Plaintiff avers that all the evidence points to Defendant being the infringer.

19. Explain, in as much detail as possible, how the BitTorrent tracking system used to detect Defendant's alleged infringement works.

7

**Response to Interrogatory No. 19:** Plaintiff does not have sufficient information in its possession, custody or control to answer this interrogatory. IPP International UG tracked the infringement.

20. Did you ever send an investigator to Defendant's real property, or nearby it, to investigate Defendant or Defendant's internet connection on location? If so, please identify said investigator(s), describe the investigation method(s), and state the dates and times of these investigations.

**Response to Interrogatory No. 20:** Plaintiff has never sent an investigator to or nearby Defendant's property to investigate the Defendant on location.

21. List each item of expense, loss, or damage that you have incurred as a result of the incident sued on in this action, giving for each: the date incurred, the name and address of the person, firm, or entity to whom owed or paid, and the goods or services for which each sum was incurred.

**Response to Interrogatory No. 21:** Plaintiff only seeks to recover statutory damages. Therefore, Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information. Nevertheless, Plaintiff avers it has suffered substantial actual damages from BitTorrent copyright infringement. The basis for determining the quantum of these damages would be a reasonable royalty for the worldwide distribution of Plaintiff's copyrighted works over the internet. Plaintiff would not enter into a license with a third party which authorizes such distribution for less than the statutory maximum award under the Copyright Act. The exact dollar amount that BitTorrent

infringement costs Plaintiff in lost sales is uncertain and requires assumptions to be made about the number of infringers who would become subscribers but for the availability of BitTorrent. Over 80,000 unique individuals infringe Malibu Media's works in the U.S. each month alone. If Plaintiff had 80,000 new subscribers per month, its revenue would increase by ten figures. Plaintiff has zero doubt that BitTorrent infringement costs it several million dollars in lost profits every year.

22. Do you have any evidence that Defendant downloaded the entirety of each work? If so, please describe this evidence.

**Response to Interrogatory No. 22:** The purpose of using the BitTorrent Protocol is to obtain a complete and useable copy of a computer file. In this case, the files are movies. Plaintiff's evidence indicated that Defendant downloaded multiple movies correlating to different .torrent files. Here, it simply does not make any sense that Defendant would only download pieces of a movie file instead of the whole file. Indeed, doing so would be inconsistent with the purpose of BitTorrent. Defendant is a habitual BitTorrent user and therefore presumably knows how to use it successfully for its intended purpose of obtaining complete files.

23. List the name and date of birth for each performer in the works.

**Response to Interrogatory No. 23:** Plaintiff objects on the basis that this interrogatory seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff further objects on the basis that this interrogatory seeks confidential business information. Plaintiff objects on the basis that this interrogatory is intended to harass Plaintiff.

Indeed, personal information about Plaintiff's employees is *blatantly* irrelevant to any issue or fact in this case. This information does nothing to further any of Defendant's affirmative defenses. Plaintiff further objects on the basis that this information is not discoverable pursuant to 18 U.S.C. 2257(d)(1). And, private parties are not entitled to inspect a company's 18 U.S.C. § 2257 records ("2257 Records"). 2257 Records and information related thereto are subject to inspection only by the Attorney General and any agency to which the Attorney General delegates such authority.

## DECLARATION

PURSUANT TO 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 8th day of December, 2014

COLETTE PELISSIER FIELD

By: *[signature]*

Dated: December 8, 2014

Respectfully submitted,

By: /s/ Emilie Kennedy
Emilie Kennedy, Esq. (02808)
ekennedy@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Business: (786) 431-2228
Facsimile: (786) 431-2229
*Attorneys for Plaintiff*

10

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *Emilie Kennedy*