**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| MALIBU MEDIA, LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Case No. 8:13-cv-03007-JSM-TBM |
| ) | |
| v. ) | |
| ) | |
| ROBERTO ROLDAN, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MOTION FOR THE ENTRY OF A PROTECTIVE ORDER LIMITING DISCOVERY TO A THRESHOLD ISSUE**

I.  **INTRODUCTION**

Plaintiff respectfully requests the Court issue a protective order temporarily limiting discovery to the threshold issue of whether Defendant had access to the instrumentality of infringement during the relevant time period and staying all other discovery unrelated to this issue.  Under Fed. R. Civ. P. 26 district courts have broad power to fashion discovery in order to ensure the just and efficient resolution of a case.  Defendant has filed a motion for summary judgment claiming that he did not reside at his parent's home during the time of infringement. Plaintiff has not yet had the opportunity to take discovery on this critical issue.  However, if true, Defendant was unable to commit the infringement and the case will be resolved. Any expensive discovery relating to issues outside this fact would be unnecessary.  For the foregoing reasons, Plaintiff respectfully requests the Court temporarily bifurcate and limit discovery for 30 days in order for the parties to complete discovery on the narrow issue of whether Defendant had access to the instrumentality of infringement.

II.  **FACTUAL BACKGROUND**

**A.  Plaintiff's Movies Were Repeatedly Infringed at Defendant's Parent's Home**

Beginning on August 18, 2013 and continuing until November 7, 2013, an individual connected to the IP address 96.58.134.12 and illegally downloaded 40 of Plaintiff's movies using the BitTorrent protocol. *See* CM/ECF 36-2.  Plaintiff's additional evidence demonstrates that the infringer also illegally obtained over 2,500 copyrighted works, including movies, television, music and software.[1]  After receiving Plaintiff's subpoena, Brighthouse correlated the IP address to the subscriber Angel Roldan.  Plaintiff named his son, Roberto Roldan, in this law suit as

---

[1] Plaintiff has not attached its additional evidence as an exhibit because it contains some content and titles that may be considered embarrassing.  Because Defendant is proceeding under his real name, Plaintiff will avoid filing it until Defendant has the opportunity to determine whether he would like it to remain confidential.  Should the Court request to see Plaintiff's additional evidence at this stage, Plaintiff will submit it under seal, unless the Court orders otherwise.

1

Defendant because Roberto Roldan's public interests via social media corresponded with Plaintiff's additional evidence, making him the most likely infringer. Further, LexisNexis's Accurint database identified Defendant as residing at his parent's house until January, 2014, after the infringement ended.

Defendant admits in his interrogatories that he is a BitTorrent user. *See* CM/ECF 42-1, Exhibit A at Response to Interrogatories #3 and #21. He uses the BitTorrent client µTorrent to obtain files through the BitTorrent protocol. *Id.* The infringer in this case used the same BitTorrent client – µTorrent to steal Plaintiff's movies. *See* CM/ECF 36-2.

### B. Defendant Provided Documents Suggesting He Was Not Living at His Parent's Home During the Time of Infringement

Although Plaintiff's evidence points to Defendant as the infringer, on January 15, 2015, Defendant produced documents calling into question whether Defendant had access to the IP address in this case. *See* CM/ECF 37 Exhibits 4-15. These documents included an affidavit from his roommate, an affidavit from a friend, a class schedule, work stubs, bank records, and transcripts - all of which call into question whether Defendant had access to the infringing IP address during the time period of infringement. *See e.g.* CM/ECF 37. Plaintiff produced document requests seeking this information on August 6, 2014. Prior to this time, Defendant had produced a lease and utility bills relating to an off campus residence during the time of infringement, but neither affirmatively placed him away from the instrumentality of infringement.

Plaintiff has depositions scheduled for Defendant and his parents on February 12, 2015. After the depositions, Plaintiff will likely be able to determine whether Defendant had access to the IP address or if another person in his parents' home committed the infringement. If Defendant did not have access, Plaintiff will move to dismiss its case.

### C. Defendant Bombarded Plaintiff with Discovery After Moving for Summary Judgment

After receiving Defendant's discovery responses, Plaintiff emailed Defendant and suggested that the parties temporarily narrow discovery to determine whether Defendant's defense is true. *See* CM/ECF 43-3 pages 2-3. Because this is a threshold issue that could potentially resolve the case, Plaintiff reasoned it was in the parties' best interests to resolve this issue and potentially avoid unnecessary discovery. Defendant rejected Plaintiff's offer and instead moved for summary judgment.

After filing his motion for summary judgment, Defendant initiated the following discovery: (1) first, Defendant moved to depose Plaintiff's witnesses in Germany with service of process via the Hague convention, (refusing to accept Plaintiff's offer to accept service in return for conducting the deposition via video tape); (2) second, Defendant propounded interrogatories and documents seeking information pertaining to Plaintiff's confidential settlements in hundreds of unrelated cases; (3) next, Defendant noticed a deposition of Plaintiff's 30(B)(6) representative in Orlando, (despite that she resides in California, her counsel in Miami, and the case in Tampa) and (4) finally, Defendant threatened to compel if Plaintiff did not immediately produce confidential documents but only agreed to a protective order on a limited issue by issue basis (requiring Plaintiff to renegotiate and re-file a new protective order every time it seeks to designate a document confidential).

Defendant's refusal to temporarily stay discovery is telling, particularly given that Defendant withheld his affidavit and evidence supporting his summary judgment motion from Plaintiff for four and a half months, even though it likely would have led to early resolution of the case. *See* CM/ECF 37 and CM/ECF 42 (noting that Defendant signed his affidavit in support

of his summary judgment motion in September but did not file the motion nor provide the supporting documents to Plaintiff until January).

### III. LEGAL STANDARD

The Federal Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  Therefore, "[a] court has broad inherent power to stay discovery until preliminary issues can be settled which may be dispositive of some important aspect of the case. Motions to stay discovery may be granted pursuant to Rule 26(c)." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (internal citations omitted). "When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved." *Vivid Technologies, Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803-04 (Fed. Cir. 1999) citing 8 Charles Alan Wright & Richard L. Marcus, Federal Practice & Procedure § 2040, at 521 (2d ed.1994).  "[W]e see no possible abuse of discretion in the order staying general discovery until the court could determine whether the case would be resolved at the summary judgment stage." *Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1133 (5th Cir. 1976).

### IV. ARGUMENT

#### A. Good Cause Exists to Limit Discovery to the Threshold Issue of Whether Defendant is the Infringer

All of the discovery recently propounded by Defendant above is irrelevant to the threshold issue raised in his summary judgment motion, and costly to the parties and the Court. In the interests of ensuring a just and efficient resolution to the case, Plaintiff respectfully requests the Court temporarily stay all discovery unrelated to the threshold issue for 30 days and at the end of that time, order the parties to submit a status report on the case and whether additional discovery is necessary.

4

As set forth below, Defendant's recent discovery requests are unnecessary prior to resolving the threshold issue.

*1. Defendant Seeks to Depose Plaintiff's Witnesses in Germany*

Deposing Plaintiff's witnesses with service through the Hague convention is very costly and burdensome. Indeed, Defendant will have to open a case in Germany, hire translators, hire a local German law firm, fly to Germany, and depose both witnesses under complex guidelines. Plaintiff will also likely have to fly to Germany to be present at these depositions. This could cost the parties thousands – if not tens of thousands of dollars. But, this discovery would not aid in determining whether Defendant could have possibly accessed the IP address during the time of infringement. Therefore, in the interests of judicial economy, this discovery should be stayed pending the resolution of whether Defendant could access the Internet. *See e.g. Jackson v. N. Telecom, Inc.*, No. CIV. A. 90-0201, 1990 WL 39311, at *1 (E.D. Pa. Mar. 30, 1990) ("in the interest of judicial economy, and with a view toward preventing possibly unnecessary and expensive discovery, this court will grant defendants' motion to stay discovery").

Defendant cannot claim that a deposition of Plaintiff's witness is so dispositive as to necessarily fly to Germany when an alternative and less costly means exist[2], and then in the same breath claim the Court should summarily adjudicate Plaintiff's claims prior to such a deposition. Noteworthy, Defendant's counsel represents similar defendants in near identical cases, but has only moved to serve Plaintiff's witnesses in Germany via the Hague Convention in this case. *See e.g. Malibu Media v. John Doe*, 1:14-cv-20393-CMA (S.D. Fla.).

*2. Defendant's Latest Discovery Request Is Only Relevant to Plaintiff's Damages*

Defendant's most recent discovery request, propounded after Plaintiff suggested temporarily staying discovery, seeks "each peer in the same swarm and any and all settlement(s)

---

[2] Plaintiff requested the deposition occur via video conference with Plaintiff accepting service.

5

or recovery received from, and all judgments entered against, each and every such peer listed." *See* Exhibit A. This request is likely to lead to enormous litigation, but only relevant if Plaintiff prevails against Defendant, and then only to the issue of appropriate damages. To explain, a BitTorrent "swarm" is "[a] group of peers sharing a particular file (identified by its unique hash identifier)." *Patrick Collins, Inc. v. John Does 1-28*, No. 12-13670, 2013 WL 359759, at *1 (E.D. Mich. Jan. 29, 2013). Because the infringer in this case downloaded 40 of Plaintiff's movies, this lawsuit contains 40 separate swarms. Defendant is requesting the names and confidential settlement terms of <u>all individuals</u> that Plaintiff has settled with in other cases who infringed a file from one of the 40 swarms in this lawsuit. This discovery request is only relevant to Defendant's fifth affirmative Defense - the "one satisfaction rule", which Defendant intends to assert in an effort to limit Plaintiff's recovery. *See* Defendant's Fifth Affirmative Defense, CM/ECF 27 at *6.

Procedurally, this request will require Plaintiff to notify each individual it has settled with of Defendant's discovery and provide that individual the opportunity to move for a protective order. Specifically, Plaintiff's settlement agreement requires:

> The terms of this Agreement shall be kept confidential. Notwithstanding the foregoing, in the event of any legal action or proceeding or asserted requirement under applicable law or government regulations requesting or demanding disclosure of this Agreement or the terms hereof, the recipient shall forthwith notify the other party in writing of such request so that the other party may seek an appropriate protective order or take other protective measures.

Defendant's counsel is aware of this language, having entered into these very same agreements in other cases. The work of negotiating protective orders for potentially hundreds of people will be costly and time consuming for the parties and the Court. Further, Plaintiff does not track its settlements by hash value. Therefore, even if Plaintiff produced all of its settlements and all corresponding Exhibits listing the hash values (each case averages between 20 and 100 separate

6

hash values), the amount of attorneys' time and fees to actually calculate the corresponding number of total settlements per hash received would be very high.  Here, this expensive and burdensome discovery should be postponed until Defendant is found liable.  *See e.g. Jabara v. Kelley*, 75 F.R.D. 475, 495 (E.D. Mich. 1977) (limiting discovery only to issues of liability and finding "[i]n the event the plaintiff establishes liability, discovery will be reopened on the issue of possible relief.")  Defendant cannot possibly claim prejudice – if he is found liable he will still have the opportunity to inspect and make his argument – but it will save each party and the Court an enormous amount of time if he is found not to be liable.

>   *3. Defendant's Request to Depose Plaintiff's Corporate 30(b)(6) Representative is Unnecessary if Defendant is Not the Infringer*

After Plaintiff suggested narrowing discovery, Defendant noticed Plaintiff's 30(b)(6) representative for deposition in Orlando, Florida, a location neither convenient for Plaintiff nor Plaintiff's attorney.  Defendant's counsel is also deposing Plaintiff's 30(b)(6) representative in a near identical case a week later in Miami.  Defendant's counsel has not suggested consolidating the depositions or otherwise reasonably accommodating Plaintiff.  Instead, Defendant's counsel has made these depositions as costly for Plaintiff as possible.  If Defendant did not have access to the IP address during the time of infringement, deposing Plaintiff's corporate representative is unnecessary. *See Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1133 (5th Cir. 1976) ("the disposition of this summary judgment motion terminated the lawsuit without putting the parties to the expense of conducting broad discovery on all issues raised in the complaint"); *Walsh v. Krantz*, No. CIV.A. 1:07-CV-0616, 2008 WL 5146531, at *5 (M.D. Pa. Dec. 8, 2008) aff'd, 386 F. App'x 334 (3d Cir. 2010) ("To avoid potentially unnecessary and expensive discovery-especially when resolution of the motions could dispose of the case in its entirety-the court temporarily stayed discovery pending the disposition of defendants' motions.")

7

> *4. Defendant's Unwillingness to Consent to a Protective Order Except on a Case by Case Basis Further Underscores the Need to Temporarily Stay Discovery*

In an effort to comply with discovery and avoid motions to compel, Plaintiff has agreed to produce certain documents containing trade secrets if the parties agree to a protective order in which Plaintiff can designate such documents confidential. This request is common during discovery proceedings. *See. e.g. United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private.")

However, Defendant will only agree to a protective order on a document by document basis. Therefore, Defendant requires Plaintiff to renegotiate a protective order for every document it would like to designate confidential – and then file that protective order with the Court for the Court to enter an order. Plaintiff attempted to explain that this was inefficient – and that the protective order it proposed provided a method for resolving disputes if Defendant did not believe a document was properly designated. Defendant still refused, and threatened a motion to compel if Plaintiff did not hand over the interrogatory response. *See* Exhibit B.

At the same time, Defendant propounded the above interrogatory requests, requesting hundreds, if not thousands of confidential settlements and corresponding subscriber names. These litigation tactics by Defendant can only be seen as to needlessly increase the parties' costs and waste judicial resources. Indeed, now Plaintiff will have to file a new protective order with the Court every time Defendant agrees to allow a document to be designated confidential. This further supports a need to stay discovery. "[T]he Federal Rules by their plain terms allow the court to limit discovery so as to avoid cumulation, duplication, harassment, expense and burdensomeness." *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991). Indeed, if

Defendant intends on increasing litigation fees at every turn, it is most efficient for the parties and the Court to first resolve the narrow threshold issue.

### B. Defendant Will Not Face Prejudice

A stay of discovery will not prejudice Defendant because evidence will either reveal that Defendant is being truthful, and Plaintiff will dismiss its claims, or alternatively, Defendant will have the same opportunities to conduct discovery. Plaintiff has agreed to consent to the extension of any discovery deadlines.

Further, Defendant has notified Plaintiff that he needs to move the trial date scheduled for this summer to the fall, because he will be out of the state of Florida for the entire summer. Therefore, a stay of discovery would not impact the trial date. And, although Defendant believes that he is entitled to his attorney's fees if he prevails, the Copyright Act is discretionary. *See e.g. Malibu Media v. Pelizzo*, 12-cv-22768 (S.D. Fla. February 18, 2014) (Exhibit C, page 10) (Denying fees under the Copyright Act to the prevailing defendant and finding "[a]t a minimum, Plaintiff would have been well within its rights to test the veracity of Defendant's assertions through discovery.") In the event, the Court finds Defendant is not entitled to all of his attorney's fees, a stay of discovery ultimately will save him costs. Defendant's opposition to staying discovery to the threshold issue, only supports his true motivation, which is to drive up the costs. It is patently apparent that Defendant's counsel is trying to increase attorneys' fees under the belief she will be able to recover them. This tactic is contrary to the pursuit of justice.

### V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court enter a protective order temporarily bifurcating the case and limiting discovery to the single issue of whether Defendant had access to the infringing IP address.

Dated: February 9, 2015

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *M. Keith Lipscomb*

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that Plaintiff has conferred with counsel for Defendant, who has advised that she opposes the relief requested.

By: /s/ *M. Keith Lipscomb*