UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| Plaintiff, | ) Civil Case No. 8:13-cv-03007-JSM-TBM |
| v. | ) |
| ROBERTO ROLDAN & ANGEL ROLDAN, | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION FOR ENTITLEMENT TO FEES AND SANCTIONS AGAINST ATTORNEY CYNTHIA CONLIN, ESQ.**

Pursuant to 28 U.S.C. § 1927 and this Court's inherent authority, Plaintiff, Malibu Media, LLC ("Plaintiff"), moves for the entry of an order holding opposing counsel, Cynthia Conlin, Esq. ("Conlin"), liable for Plaintiff's costs and fees which were caused by her vexatious multiplication of the proceedings.[1] In support, Plaintiff submits the following memorandum.

**I.    INTRODUCTION**

Conlin vexatiously multiplied the proceedings by consciously withholding exculpatory evidence. If the evidence had been timely produced, the parties and this Court would have avoided a substantial amount of unnecessary work. Upon information and belief, Conlin represents defendant Roberto Roldan ("Roberto") either entirely or in large part on a contingency. Her calculated plan was to drive up her legal fees and then attempt to collect them from Plaintiff under the Copyright Act's permissive prevailing party attorney fee statute, 17 U.S.C. § 505.

---

[1] Although Plaintiff believes that Defendants Roberto and Angel Roldan should likewise be jointly and severally liable for some of the at-issue costs and fees, the instant motion is concerned solely with Conlin's liability.

1

Plaintiff commenced this action to protect its valuable interests in, and to deter the ongoing infringement of, its copyrighted movies. Forty of Plaintiff's copyrighted movies were continuously infringed. Based on its pre-suit investigation, Plaintiff believed that the internet subscriber's son, Roberto, was the infringer. Roberto is a college student who admits to infringing third-party works from his parents' residence (the location of infringement) and to using the same BitTorrent client that was used to infringe Plaintiff's works.

Conlin immediately discovered that although Roberto was a likely suspect, he could not have committed the infringement because he did not have access to his parents' home during the period of recorded infringement. The actual infringer, it turns out, is Roberto's father, Angel Roldan ("<u>Angel</u>"). Since the Copyright Act allows a prevailing defendant to sometimes recover defense fees, Conlin hatched a plan to exploit the Copyright Act to effectively rob Plaintiff. Specifically, Conlin obtained documentary evidence showing that Roberto was either at work or in class during the alleged infringements and prepared and obtained alibi affidavits, including an affidavit by Roberto attesting to the authenticity of his accumulated exculpatory evidence. By early September of 2014, Conlin had drafted a summary judgment motion incorporating Roberto's exculpatory evidence and arguing that "given [Roberto]'s class and work schedule … [he] could not have possibly done the downloads." Conlin neither filed this motion, nor otherwise provided Plaintiff with Roberto's exculpatory evidence. Instead, she continued to litigate in bad faith with one goal in mind: to vexatiously delay the proceeding for as long as possible in order to maximize the defense fees that she believed she could ultimately recover.

To accomplish this, Conlin (1) obtained and failed to comply with multiple unnecessary discovery extensions; (2) produced non-probative and irrelevant evidence to maintain the appearance that she was expeditiously litigating in good faith; (3) raised asinine and facially absurd objections to withhold exculpatory evidence; (4) filed extremely lengthy and frivolous

motions and pleadings; and (5) insisted on incurring unnecessary expenses unless paid off. Additionally, Conlin (1) instructed Roberto not to perform reasonable investigations in the course of discovery; (2) instructed non-party witnesses to violate their subpoena obligations by withholding evidence; (3) filed untimely motions containing fraudulent misrepresentations; and (4) refused to take the corrective measures necessary to avoid misleading the Court.

Unfortunately for Plaintiff, undersigned, and this Court, Conlin's scheme caused a tremendous amount of wasted effort, time, and money. Through this motion, Plaintiff seeks compensation for its wasted efforts. Specifically, Plaintiff requests an order holding Conlin liable for the costs and fees Plaintiff incurred since September 2014, at which time Roberto would have been dismissed but for Conlin's deliberate withholding of exculpatory evidence.

## II.    FACTUAL BACKGROUND

### A. Conlin files a frivolous and vexatious 281-page motion to dismiss containing irrelevant and inaccurate hyperbole designed to disparage and criticize Plaintiff and enflame the Court

Conlin's unreasonable and vexatious defense strategy began with a "Motion to Dismiss Action with Motion to Strike Inadmissible Evidence from Complaint with Incorporated Memorandum of Law" [CM/ECF 16]. Although the motion included a sentence stating that "[Roberto] did not actually reside in the home where the Internet connection existed for the subject IP address" [CM/ECF 16], the motion did not corroborate or further discuss this highly relevant issue. Instead, and in a desperate hope to enflame the Court and discredit, shame, or embarrass Plaintiff, the motion focused on four incorrect assertions: (1) "allegations pertaining to an IP address are not enough to identify an infringing individual"; (2) "Malibu Media's case is based on unlawfully obtained information which is inadmissible as evidence"; (3) Plaintiff has a contingent fee relationship with a witness; and (4) Plaintiff engages in private investigation

3

without a license [*id*]. Conlin did not substantiate these erroneous factual allegations or otherwise articulate why they could ever warrant dismissing or striking Plaintiff's complaint.

Rather than refer to rules of evidence, address the applicable legal standards of Rules 12(b) and (f), focus on relevant issues, or set forth any coherent legal argument, Conlin "supported" her motion by filing <u>over 250 pages</u> of irrelevant material that was lifted wholesale from an opposing counsel's (Morgan Pietz, Esq.) filing in an unrelated District of Maryland case [CM/ECF 16-1–16-27]. Incredibly, Conlin did not cite to the overwhelming majority of the exhibits, underscoring their sheer randomness and irrelevancy. Indeed, it appears that Conlin filed 250 pages of exhibits for the sole purpose of distracting and disparaging Plaintiff. Plaintiff spent scores of hours trying to understand these documents' relevancy. Ultimately, this Court denied the motion, ruling that "Defendant has not established grounds for dismissal" [CM/ECF 25]. Other courts have also rejected Conlin's persisting frivolity. *See, e.g.*, *Malibu Media v. Dreev*, Case No. 6:13-cv-01959-CEM-KRS, CM/ECF 35 (January 5, 2015).[2]

### B. Conlin obtains Roberto's Exculpatory Evidence, prepares a motion for summary judgment, and then sits on it

Plaintiff took seriously Roberto's barely-mentioned and uncorroborated "I didn't live there" defense. Accordingly, undersigned requested further information, and on June 28, 2014,

---

[2] In this order, the Honorable Mendoza criticized Conlin's virtually identical motion as conclusory, legally unjustified, and crude:

> Defendant proceeds without citing *any* legal standard. From what this Court can decipher, Defendant's Motion crudely pursues several arguments … Defendant has failed to carry its burden of demonstrating that Plaintiff has not stated a claim. … Defendant has failed to show how allegations based on purportedly inadmissible evidence are "redundant, immaterial, impertinent, or scandalous." Lastly, insofar as Defendant argues that Plaintiff will not be able to prove that Defendant infringed on Plaintiff's copyrights, neither Rule 12(b)(6) nor 12(f) are proper vehicles for raising those concerns.

Conlin provided a lease and utility bills for a residence 40 minutes away from Angel's home.[3] Since Roberto lived only a short 40-minute drive from his parents' house and admits to BitTorrent use and overlapping interests with the recorded infringements, Plaintiff suspected that Roberto had been living at both his parents' house and his nearby college apartment.

On August 6, 2014, to get to the bottom of Roberto's defense, Plaintiff requested production of all documents that would indicate that Roberto was "not at [his] residence or within the control of [his] IP address at or around the time of infringement" [CM/ECF 54-2]. Unbeknownst to undersigned, Conlin possessed a substantial amount of such exculpatory evidence including: (1) Roberto's USF class schedule; (2) Roberto's work stubs; (3) Roberto's bank records; (4) Roberto's class syllabi and school transcripts; and (5) two notarized affidavits from Roberto's friends executed in August of 2014 (collectively, "Roberto's Exculpatory Evidence").

When Roberto's discovery responses came due, Conlin requested an after-the-fact extension of time to respond. Although undersigned granted Conlin's belated request and thereafter granted her *additional* extensions of time, she failed to timely respond by the multiple enlarged discovery dates. When Conlin *finally* responded in late November 2014, she objected to *each and every one* of Plaintiff's requests. *See* Exhibit "**A**." She proffered that Roberto had no information related to Angel's home and insisted that Plaintiff's request for evidence showing that Roberto did not have access to Angel's home was "overbroad in scope and not reasonably calculated to lead to the discovery of admissible evidence." *See id.* Through these baseless objections, Conlin withheld Roberto's Exculpatory Evidence.

---

[3] In her Motion in Opposition to Plaintiff's motion for leave to substitute party Defendants, Conlin notes that she also provided undersigned with "a USF Housing Room condition report to show when Defendant resided at USF" [CM/ECF 54 at p. 8–9]. This document is not relevant because it pertains to a period of time not at issue.

In the ensuing discovery deliberations, undersigned advised Conlin of Roberto's duty to make a reasonable effort to learn information and obtain responsive documents. Undersigned also challenged Conlin's relevancy objections by repeatedly explaining that evidence demonstrating Roberto's ability to travel from Tampa to St. Petersburg was relevant "to establish whether, during the period of the infringement, Defendant was always or regularly located (a) at the Saint Petersburg residence (which would suggest that he could have been the responsible infringer) or (b) at his Tampa residence or at some other location (which would suggest that he was not the responsible infringer)" [CM/ECF at p. 2–3, 9]. Conlin stone walled and at no time throughout the discovery discussions did she come forward with Roberto's Exculpatory Evidence.

### C. Conlin sandbags Plaintiff with Roberto's Exculpatory Evidence, moves for summary judgment based thereon, and insists upon needlessly incurring additional defense fees unless paid $25,000

Months later, on Thursday, January 15, 2015, Conlin *finally* provided Roberto's Exculpatory Evidence. The next day, undersigned advised that it was considering dismissing Roberto and requested that Conlin refrain from incurring additional and unnecessary expenses. *See* Exhibit "**B**." Nevertheless, the very next business day Conlin filed a 49-page motion for summary judgment [CM/ECF 36]. This motion primarily relied upon Roberto's Exculpatory Evidence: the evidence that Conlin had withheld for five months under a relevancy objection. The motion also incorporated a *September 5, 2014* notarized affidavit by Roberto attesting to the authenticity of the motion and its exhibits [CM/ECF 37].[4] Thus, unless Roberto's affidavit is fraudulent, by September 5, 2014 Conlin had already aggregated all of Roberto's Exculpatory Evidence and had drafted and prepared a motion for summary judgment based thereon. Yet, she

---

[4] Roberto's affidavit was originally filed along with the motion for summary judgment, but was stricken, apparently because of the inadvertent inclusion of confidential and personal information (*e.g.*, social security numbers). It has been refiled and now appears as docket entry 37.

withheld Roberto's Exculpatory Evidence and continued to needlessly increase her defense fees for the next five months. Conlin then indicated that she would continue to increase her fees even further and would not stop working on this case unless paid off; she expressly told undersigned that she would insist upon traveling to Germany for the purpose of deposing Plaintiff's witnesses unless Plaintiff paid her $25,000.00. *See* Exhibit "**C**."

> D. **Plaintiff schedules Angel and Gladys's depositions, Conlin advises Angel and Gladys, with whom Roberto has a conflict, to violate their subpoena obligations, and she requests that the subpoenaed depositions be rescheduled**

After the court entered an order allowing Plaintiff to depose Roberto and his parents, Gladys ("Gladys") and Angel [CM/ECF 45], undersigned sent Conlin Rule 45 subpoenas, scheduling the depositions and subpoenaing documents, including Gladys and Angel's hard drives. Conlin refused to accept service on behalf of Gladys and Angel since she only represented Roberto, but raised an informal objection to the subpoena's production requests. Undersigned explained that Roberto lacked standing to object, and requested that Conlin identify the basis for Roberto's "personal right or privilege" in his parents' subpoenaed documents and hard drives. Further, undersigned requested that Conlin revise Roberto's inconsistent discovery responses (which disclaimed any knowledge whatsoever as to even the existence of hard drives in his parents' possession). *See* Composite Exhibit "**D**." Conlin refused to instruct Roberto to make discovery investigations, and declined to take additional steps to demonstrate his standing.

After Plaintiff personally served Gladys and Angel with subpoenas for depositions *duces tecum* for 9 AM on the morning of Friday, February 13, 2015, Conlin fraudulently advised Gladys that she and Angel were excused from complying with the document request portion of their subpoenas.[5] Conlin so advised even though (1) she had a conflict; (2) she did not represent

---

[5] At her deposition, Gladys testified that she did not bring the subpoenaed documents because over a week prior she was advised to withhold the documents. Bradford Patrick, Esq. (who appeared as Gladys's attorney for purposes of

7

Gladys; (3) Roberto's informal objection to the subpoena was rejected as procedurally defective on account of his lack of standing; and (4) no formal motions or protective orders were filed.

Three days before the scheduled depositions, Conlin asked to push back the depositions until after President's Day weekend to accommodate Gladys and Angel's work schedules. Undersigned agreed, amended notices were issued resetting the depositions for 9 AM on Monday, February 16, 2015. Since the subpoenas remained unaltered, Gladys and Angel still only had until 9 AM on Friday, February 13, 2015 to object to the subpoenas. *Accord* Fed. R. Civ. P. 45(d)(2)(B).

### E.     Conlin files an eleventh hour and bad faith "joint" motion for a protective order containing erroneous and fraudulent conferral certifications

Once no formal objections or protection requests were timely filed, undersigned sent Conlin a courtesy reminder, asking her "to remind the witnesses [Angel and Gladys] to bring the requested documents/hard drives included in their subpoenas." On Saturday, February 14, 2015, Conlin requested that Plaintiff withdraw its production requests. Undersigned again declined to do so. *See* Composite Exhibit "**F**." A telephonic conference followed, during which counsel discussed Roberto's standing to object. This conversation resulted in an impasse and was memorialized in an email (to which Conlin did not respond). *See* Exhibit "**G**." Since undersigned was unaware that Conlin had instructed Gladys and Angel to violate their subpoena obligations, Plaintiff did not cancel its arrangements to have a forensic professional image the hard drives during the depositions.

---

the deposition) then stated on the record that he never so advised. When Gladys was thus asked to identify the individual who erroneously advised her to violate her subpoena, Gladys looked directly at Conlin, who desperately lodged a privilege objection (which, of course, was readily dismissed since Conlin was not and never had been Gladys's attorney). Conlin, panic-stricken, then looked at Bradford Patrick, who begrudgingly came to her rescue by specifically instructing Gladys <u>not</u> to answer the question. It was manifestly evident to <u>everyone</u> in the room that Conlin had unethically and improperly advised Gladys and Angel to violate their subpoenas. *See* pertinent portion of Gladys's deposition transcript attached hereto as Exhibit "**E**" (transcript pages 6–7 and 11).

8

The next morning (Sunday), Conlin filed a motion for a protective order, lodging formal (albeit untimely) objections to the subpoenas [CM/ECF 49]. Shockingly, the motion did not address Roberto's standing—the <u>only</u> issue about which undersigned had conferred. Rather, it argued that Plaintiff's subpoena requests were untenable under existing law. To circumvent her client's lack of standing, Conlin characterized her motion as a "joint" motion. In other words, one purportedly filed both by her, on Roberto's behalf, *and* Bradford Patrick, Esq. ("<u>Patrick</u>"), on behalf of Gladys and Angel. Conlin incorporated good faith conferral certifications with her and Patrick's e-signatures, even though undersigned and Patrick had never conferred about the central issues raised in her "joint" motion.[6]

Upon information and belief, Conlin unethically incorporated a fraudulent Rule 3.01(g) certification in her "joint" motion because she wanted to have an objection lodged by a party with standing to justify, after-the-fact, what otherwise amounted to a blatant obstruction of justice. Specifically, Conlin's unethical instruction to non-party witnesses (with whom she has a conflict) to violate subpoenas and withhold subpoenaed evidence.[7]

### F. Conlin refuses to cure her blatant misstatements

Undersigned immediately requested that Conlin correct her misstatements and erroneous certificates of conferral to avoid perpetuating a clear misrepresentation. Incredulously, Conlin declined. She first explained that she had pressing personal errands (which she chose to put

---

[6] Patrick and undersigned exchanged two cursory emails over President's Day weekend, through which Patrick suggested that the subpoena production requests were irrelevant because they were directed to non-parties. Undersigned responded with the detailed bases for its disagreement and expressly asked Patrick to advise if he still wanted to object, in which case undersigned offered to partake in a good faith conferral. Patrick never responded, presumably because undersigned's rebuttal arguments sufficiently quelled Patrick's concerns and mooted his limited relevancy objections. Neither of Patrick's brief emails addressed the central issue raised in Conlin's "joint" motion (*i.e.*, that prevailing law prohibits the unrestricted access to hard drives).

[7] As later noted, Conlin had a personal interest in withholding Angel's hard drive from discovery; such production would have pointed to Angel as the infringer and would have therefore threatened Conlin's ability to manipulate a profit out of this litigation.

before her professional obligations). She then erroneously insisted that attorneys are merely required to confer over requested *relief* and not over the *issues* pursuant to which relief is requested. *See* Composite Exhibit "**H**." This demonstrably false contention undermines the entire purpose of a good faith conference and is antithetical to Rule 3.01(g)'s plain language.[8] Conlin's misconduct and her subsequent inconsistent position that a conference requires in-depth conversations[9] evinces that Conlin was intentionally misreading the local rules to obstruct justice by improperly instructing witnesses to violate their subpoena obligations.

> G. **Plaintiff moves for leave to substitute party defendants, a motion that Conlin opposes with a lengthy and frivolous memorandum replete with irrelevant information and *ad hominem* attacks**

A forensics professional traveled to the February 16, 2015 depositions to image the subpoenaed hard drives, but was unable to do so since Gladys and Angel withheld the subpoenaed production per Conlin's instruction. The depositions were illustrative, however, insofar as they: (1) implicated Angel; (2) exonerated Roberto by establishing that he did not have the requisite access to his parent's internet; and (3) confirmed that Roberto made no effort to obtain relevant information.[10] Finally aware of the true facts, Plaintiff filed a motion to substitute party defendants [CM/ECF 53].

---

[8] *See* Fed. R. Civ. P. 26(c) ("The motion must include a certification that the movant has *in good faith* conferred … in an effort to *resolve the dispute*…."); M.D. Fla. L.R. 3.01(g) ("Before filing any motion … the moving party shall confer with counsel for the opposing party in a good faith effort to *resolve the issues raised by the motion*…."); *see also, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Howard*, 296 F.R.D. 692, 697 n.11 (S.D. Ga. 2013) ("[P]arties seeking a protective order … must certify that a good faith effort has been made to resolve the dispute before coming to court. Their duty to confer must also be meaningful. More than a 'we met and talked' certification is needed.").

[9] Weeks later and in a separate context, Conlin emailed undersigned that a good faith conferral cannot be done via email and must be accomplished telephonically or in-person. *See* Exhibit "**I**." In the parties' follow-up telephone call, Conlin represented that she is aware of and routinely relies upon Middle District case law to support this proposition.

[10] Consistent with Conlin's prior representations that she would not instruct Roberto to perform reasonable investigations in the course of discovery, Roberto testified that, in responding to Plaintiff's discovery, he only revealed information 100% known to him and documents possessed by him; he did not take any steps to learn information reasonably knowable or to obtain documents easily accessible. *See* pertinent portion of Roberto's deposition transcript attached hereto as Exhibit "**J**" (transcript pages 26–30).

Conlin's lengthy opposition was virtually devoid of any legal substance and instead relied on irrelevant information and *ad hominem* attacks [CM/ECF 54]. A few of Conlin's arguments warrant discussion. First, Conlin cites to Plaintiff's discovery requests, noting that they do not explicitly distinguish Roberto's Tampa residence from his parents' St. Petersburg home. This is gamesmanship. In context, Plaintiff's discovery was clear. Moreover, Plaintiff later cured any paper ambiguity. Equally improper is her argument that Plaintiff is estopped from substituting party defendants because Roberto "deserves a dismissal on the merits [in light of] Plaintiff's egregiousness of putting [him] in this position [and] begrim[ing] his name" [CM/ECF 54]. Not only is this argument entirely incoherent (since Plaintiff *had* agreed to dismiss Roberto on the merits), but it is disingenuous. If Roberto was concerned with being named publicly, Conlin should have moved to allow him to proceed anonymously. Conlin has litigated with Plaintiff on numerous occasions and knows Plaintiff does not oppose defendants' motions to proceed anonymously. Indeed, Conlin has filed such motions in numerous other cases. To now blame Plaintiff for her inaction is disingenuous and unfair. Her attempt to fault Plaintiff is a patently sanctionable effort to distract the Court from her own misconduct and from the actual issues in controversy.

### III. MEMORANDUM OF LAW

#### A. Standard of review

28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The statute both deters unreasonable litigation practices by attorneys and ensures that attorneys who needlessly create unnecessary costs for their adversaries bear those expenses. *See Boler v. Space Gateway Support Co. LLC*, 290 F. Supp.2d 1272, 1277 (M.D. Fla. 2003). Since §

11

1927 is grounded on notions of reasonableness, the statute looks at an attorney's actions objectively, not subjectively. An attorney violates § 1927 if she unnecessarily obstructs or prolongs litigation, or otherwise "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Malibu Media, LLC v. Helferich*, No. 1:12-cv-00842, 2014 WL 690921, *1 (S.D. Ind. Feb. 21, 2014); *see also In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987); *Bernstein v. Boies, Schiller & Flexner LLP*, 416 F. Supp.2d 1329, 1331 (S.D. Fla. 2006).

Additionally, of course, federal courts have inherent power to sanction litigants for conduct that abuses or delays the judicial process. "These powers are governed not by rule or by statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the *orderly* and *expeditious* disposition of cases." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1553 (11th Cir. 1996) (citing *Chambers*, 501 U.S. at 43–50); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (same); *Boler*, 290 F.2d at 1277–78 ("A federal court may exercise its inherent power to sanction bad faith misconduct even if that conduct could be sanctioned under a statute or procedural rule."). Although bad faith is required to impose a sanction under the Court's inherent authority, the § 1927 bad faith standard applies; the inquiry is an objective one, such that subjective bad faith may be inferred and need not be definitively established. *See, e.g.*, *Boler*, 290 F.2d at 1277 ("A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)).

    **B.**    **Equity demands Conlin pay for the fees she caused Plaintiff to unnecessarily incur**

For five months, Conlin withheld Roberto's Exculpatory Evidence. Conlin blew multiple discovery deadlines, and ultimately disingenuously objected to producing the Exculpatory

Evidence on the basis of relevancy. For five months, Conlin sat on and delayed filing a motion for summary judgment. Incredibly, this motion—which was drafted no later than September 5, 2014 but not filed until January 19, 2015—primarily relied upon the very Exculpatory Evidence that Conlin had intentionally withheld from production. *See* CM/ECF 36–37.

The circumstances lead but to one rational conclusion: Conlin chose to use this litigation as a way to wrongfully and unethically line her pockets. Upon realizing that Roberto did not have the ability to access the instrumentality of infringement during the pertinent time period, Conlin figured that Roberto would ultimately prove to be the prevailing party, a circumstance that could open the door for fee-shifting under the Copyright Act. *See* 17 U.S.C. § 505. Determined to take advantage of this provision and maximize her ultimate profit by protracting the litigation, Conlin collected Roberto's Exculpatory Evidence, but only provided Plaintiff with just enough to make it appear as though she were litigating in good faith. She then withheld Roberto's Exculpatory Evidence, together with a fully-drafted motion for summary judgment that relied upon same.

A reasonably diligent and careful attorney would have focused on and pounded the lack of access argument so that there were no questions in Plaintiff's mind regarding Roberto's non-liability. *Cf.* Fed. R. Civ. P. 1, 26; Fla. R. Prof. Conduct 4–1.3, 4–3.2, 4–3.4; *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545–46 (11th Cir. 1993); *Bernstein*, 416 F. Supp.2d at 1331; *Crespo v. Sky Chefs, Inc.*, No. 0223260, 2003 WL 22466213 (S.D. Fla. Oct. 8, 2003). *See also Johnson v. Stryker Corp.*, No. 3:11-cv-651, 2012 WL 487443, *1–3 (M.D. Fla. Feb. 14, 2012) ("The overall purpose of discovery under the Federal Rules is to require the disclosure of <u>all relevant information</u> so that the ultimate resolution of disputed issues in any civil action may be based on <u>a full and accurate understanding of the true facts,</u> and therefore embody a <u>fair and just result</u>"). Instead, Conlin vexatiously multiplied the proceedings by seeking (and failing to meet)

extensions of time to comply with discovery, raising inane and unsupportable discovery objections, and filing lengthy and facially frivolous motions. Further, when Conlin's scheme was threatened by her suspicion that Angel was the actual infringer, she made sure to keep that information from emerging.[11] To that end, she improperly refused to instruct Roberto to make reasonable discovery investigations and unethically instructed witnesses to withhold their hard drives and related subpoenaed documents. Such egregious conduct is manifestly unethical and unreasonable. *Cf.* Fed. R. Civ. P. 1, 11, 26; Fla. R. Prof. Conduct 4–1.2(d), 4–1.3, 4–1.4, 4–2.1, 4–2.4(b), 4–1, 4–3.2, 4–3.3, 4–3.4, 4–4.1, 4–4.3; *Gonzalez v. Mortgage Electronic Registration Sys., Inc.*, No. 14-11188, 2014 WL 6805153 (11th Cir. Dec. 4, 2014); *Malautea, Ltd.*, 987 F.2d at 1545–46; *Franken v. Mukamal*, 449 Fed. App'x. 776, 778 (11th Cir. 2011); *Footman v. Cheung*, 139 Fed. App'x. 144, 146 (11th Cir. 2005); *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254–55 (11th Cir. 1996); *In re Delta/AirTran Baggage Fee Antitrust Litigation*, 846 F. Supp.2d 1335, 1349–52 (N.D. Ga. 2012) (discussing attorneys' obligation to ensure that clients make reasonable inquiries before responding to discovery requests).

Conlin also filed an untimely "joint" motion for a protective order that (1) neglected to discuss the only issues the parties had conferred about, (2) improperly focused upon issues that the parties had not discussed, and (3) included a blatantly erroneous certificate of good faith conferral. Further, she steadfastly refused to correct the certificate. It goes without saying that a reasonably diligent and careful attorney would <u>not</u> have filed untimely motions containing

---

[11] Were it demonstrated that Roberto's father committed the alleged infringement, awarding Roberto or Conlin fees would <u>not</u> serve the interests of the Copyright Act, and courts throughout the county routinely deny fees to defendants in peer-to-peer infringement cases when the infringement was committed by a member of the defendant's immediate family. *See, e.g.*, *Interscope Records v. Leadbetter*, 312 F. App'x 50, 51 (9th Cir. 2009); *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 727 (5th Cir. 2008); *Loud Records, LLC v. Sanchez*, No. cv-05-695, 2008 WL 628913 (D. Ariz. Mar. 5, 2008); *Elektra Entmt Grp., Inc. v. Perez*, No. 05-931-AA, 2006 WL 3063493 (D. Or. Oct. 25, 2006); *Priority Records LLC v. Chan*, No. 04-cv-73645, 2005 WL 2277107 (E.D. Mich. May 19, 2005). *See also Patrick Collins, Inc. v. Osburn*, No. PWG-12-1294, 2014 WL 1682010 (D. Md. April 28, 2014) ("[Defendant]'s choice to pursue a particularly aggressive defense strategy does not constitute exceptional circumstances sufficient to warrant an attorney's fee award.").

factual misrepresentations and erroneous certificates of conferrals, and would certainly not have declined to correct her misstatements. *Cf.* Fed. R. Civ. P. 1, 11(b), 26(c); M.D. Fla. L.R. 3.01(g); Fla. R. Prof. Conduct 4–1.3, 4–3.1, 4–3.2, 4–3.3, 4–3.4; *Bautista v. Star Cruises*, 696 F. Supp.2d 1274, 1278 (S.D. Fla. 2010) ("The lawyer must not allow the tribunal to be misled by false statements ... that the lawyer knows to be false"); *Footman v. Cheung*, 341 F. Supp.2d 1218, 1225 (M.D. Fla. 2004) (a lawyer has a solemn duty of candor to the tribunal and must take immediate corrective measures to avoid misleading the court).

      Courts across the country, and especially in the Eleventh Circuit, have routinely granted like motions under similar and less severe circumstances. *See, e.g.*, *Gonzalez*, 2014 WL 6805153 (sanctioning attorney for acting unprofessionally and raising multiple unsupported and frivolous arguments); *Mukamal*, 449 Fed. App'x. at 778 (attorney sanctioned for filing a frivolous motion and pleadings containing false and unsupported allegations); *Footman*, 139 Fed. App'x. at 146 (same); *Worldwide Primates*, 87 F.3d at 1254–55 (same); *Malautea*, 987 F.2d at 1541–46 (attorney sanctioned for participating in a discovery cover-up, creating unnecessary delay, and increasing both the cost of litigation and the burden of the court, particularly since court found that counsel had provided incomplete discovery responses and objections that were "interposed for the improper purpose of causing unnecessary delay [and] increasing the cost of litigation for the Plaintiff"); *Barash v. Kates*, 585 F. Supp.2d 1368 (S.D. Fla. 2008) (litigant sanctioned for needlessly maintaining and protracting litigation for his own personal financial gain); *Price*, 2008 WL 5049295 (attorney sanctioned for failing to correct misrepresentations made to the court); *Bernal*, 479 F. Supp.2d at 1332 (attorney sanctioned for knowingly and falsely filing a motion with mischaracterizations in an effort to mislead and divert the Court's attention).


### C.   Conclusion

For the reasons set forth above, and pursuant to 28 U.S.C. § 1927 and this Court's inherent authority,[12] Plaintiff now respectfully requests entry of an order holding Cynthia Conlin, Esq. liable for the costs and expenses she unnecessarily forced Plaintiff to incur in connection with this litigation.  More specifically, Plaintiff requests an order holding Conlin liable for the costs and fees Plaintiff incurred since September 2014, at which time Roberto would have been dismissed from this action had Conlin not wrongfully and unethically withheld his exculpatory evidence.  A proposed order granting the requested relief is attached for the Court's convenience as Exhibit "K."

Dated: March 24, 2015

Respectfully submitted,

LIPSCOMB EISENBERG & BAKER, PL

By: /s/ *M. Keith Lipscomb*
**M. Keith Lipscomb, Esq.**
Florida Bar No. 429554
klipscomb@lebfirm.com
**Daniel C. Shatz, Esq.**
Florida Bar No. 94696
dshatz@lebfirm.com
**Emilie Kennedy, Esq.**
Florida Bar No. 92808
ekennedy@lebfirm.com
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228

---

[12] The Court, *sua sponte*, may also impose sanctions pursuant to Rule 11 or Rule 16.  Rule 11 authorizes the imposition of sanctions against an attorney if the attorney either presents meritless or frivolous arguments to the Court that cause unnecessary delay and needlessly increase the cost of litigation or the attorney otherwise knowingly files misrepresentations or false certifications to the court.  *See* Fed. R. Civ. P. 11; *Attwood v. Singletary*, 105 F.3d 610 (11th Cir. 1997); *Smith v. Psychiatric Solutions, Inc.*, 864 F. Supp.2d 1241 (N.D. Fla. 2012).  Rule 16 is also on point.  Rule 16(f) states that the court may issue "any just orders" if a party *or its attorney* fails to appear at, prepare for, or in good faith participate in a hearing.  *See* Fed. R. Civ. P. 16(f).  Although the rule is often applied to schedule conferences, it broadly applies to the discovery process and includes subpoenaed depositions.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 71 (1991).

                                                              Facsimile:  (786) 431-2229
                                                              *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 24, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

                                                       By: /s/ *Daniel C. Shatz*