```
              UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION

MALIBU MEDIA, LLC,              )
                                )
    Plaintiff,                  )
                                )
                                )   Civil Action No.
v.                              )   8:13-cv-03007-JSM-TBM
                                )
ROBERTO ROLDAN and              )
ANGEL ROLDAN,                   )
                                )
    Defendant.                  )
_____ )
```

### DEFENDANT ROBERTO ROLDAN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND COUNTERCLAIMS WITH JURY DEMAND

COMES NOW Defendant ROBERTO ROLDAN (hereinafter, "Defendant"), by and through his undersigned attorney, and hereby submits his Answer in response to the second amended complaint (Doc. 61).

1. Defendant denies all allegations raised in the second amended complaint.

### CLAIM FOR ATTORNEY'S FEES AND COSTS

Defendant respectfully pleads that this Honorable Court award Defendant his attorney fees as "prevailing party" pursuant to 17 U.S.C. § 505, and any other relief as this Court deems just and proper, for his defense in this civil action, which began against him with the filing of the first amended complaint and continues against him with him still a party defendant.

## COUNTERCLAIM WITH DEMAND FOR JURY TRIAL

COMES NOW Defendant/Counter-Plaintiff, ROBERTO ROLDAN, by and through his undersigned counsel, and hereby files this counterclaim against Plaintiff/Counter-Defendant, MALIBU MEDIA, LLC.

### JURISDICTION & VENUE

1. This court has subject-matter jurisdiction over the second amended complaint under the United States Copyright Act of 1976. This counterclaim brings claims that are so related as to form part of the same case or controversy and, as such, supplemental jurisdiction over same is proper over it pursuant to 28 U.S.C. § 1367.

2. Counter-Defendant, Malibu Media, is the Plaintiff in this action and as such has already availed itself to the jurisdiction and venue of this court.

3. Venue is also proper herein because a substantial part of the events or omissions giving rise to the claims occurred herein.

### FACTUAL ALLEGATIONS

4. Counter-Plaintiff, ROBERTO ROLDAN ("Roberto"), is a college student and a Fulbright scholar at the dawn of his career.

5. Counter-Defendant, MALIBU MEDIA, LLC ("Malibu Media"), is the most litigious copyright plaintiff in the United States. Since its first lawsuit filed on February 8, 2012 (which, incidentally, is the date of its company formation), Malibu Media has filed more than 3540 (and growing) separate federal civil actions for the alleged infringement of its pornographic films.

6. Malibu Media's lawsuits, filed in assembly line fashion, accuse individuals of illegally downloading its pornography. Usually, Malibu Media targets the subscriber of the Internet account (Doc 8 ¶ 27). The person who actually committed the download, however, is never really more than a guess because Malibu Media always only has an IP address and can never truly identify whether the downloader was a resident or a guest in the home, or a neighbor within proximity of the router.

7. Prior to filing the instant lawsuit, Malibu Media's unlicensed German investigator detected IP address 96.58.134.12 as being used for the alleged downloading of Malibu Media's pornography.

8. On November 27, 2013, Malibu Media filed a copyright infringement action against the then-unknown ("John Doe") subscriber assigned to IP address 96.58.134.12.

9. Through service of a subpoena on the subscriber's Internet Service Provider, Malibu Media obtained the subscriber's name and address.

10. After conducting what it called an "initial investigation of the information provided by the ISP," Malibu Media concluded "that the infringer is not the subscriber of the internet service but another individual residing at the subscriber's home." (Doc. 6 ¶ 3.)

11. Malibu Media's "initial investigation" was an Accurint® report conducted by its attorneys (*see* Doc. 53 at 2).

12. Lexis Nexis, the company that offers the Accurint® service to legal professionals, warns users that Accurint® reports "may contain errors"; its product aggregates and reports data supplied by other sources and the report is not "a comprehensive compilation of the data"; and that, before users rely on the data in its reports, said data "should be independently verified."

13. The Accurint® report ran by Malibu Media's attorneys indicated that Roberto was a resident of the subscriber's home.

14. In actuality, however, the Accurint® report was in error, as Roberto had moved out of the subscriber's home about a year before the alleged downloads occurred.

15. Malibu Media failed to independently verify the Accurint® Report's false data that showed Roberto resided at the physical address corresponding with the IP address.

16. Rather than independently verifying the results of the Accurint® report through a competent investigator, Malibu Media looked at Roberto's public Facebook page to see that Roberto had "liked" 8 of the alleged 2,514 items (television shows, movies, etc.) that Malibu Media's unlicensed German agent had allegedly detected as being downloaded from the subscriber's IP address (Doc. 8 ¶¶ 34-38). Even though these titles, including *Breaking Bad, Scrubs, Lost,* and *Star Wars*, were also liked by tens of millions of others, Roberto's having "liked" them was enough "evidence" to convince Malibu Media that Roberto had downloaded Malibu Media's (wholly unrelated) content.

17. On April 3, 2014, Malibu Media filed its amended complaint, which dropped the never-served "John Doe" and added Roberto as a Defendant. Malibu Media labeled Roberto as "a persistent online infringer of Plaintiff's [Malibu Media's] copyrights" and sued him, pursuant to the Copyright Act, for $150,000 for the allegedly "willful" infringement of *each* of 40 works — a total of $6 million — plus attorney's fees and costs.

18. The videos Malibu Media accused Roberto of downloading are all pornographic and published under the "X-Art" brand on Malibu Media's website, www.xart.com. Rather than having any sort of discrete "brown wrapper," the X-Art website immediately affronts viewers with multiple screenshots of vulgarity, complete with naked penises, shaved vaginas, gaping mouths, and bare bodies in various sexual positions.  The content is embarrassing, especially when an accused defendant is named in a public civil action as having downloaded it illegally and willfully.

19. Malibu Media hired a process server who attempted to serve Roberto at the subscriber's home but was told Roberto did not live at that address (Doc. 13).

20. Malibu Media learned where Roberto worked — at the university newspaper — and, on May 21, 2014, served him with the lawsuit there.

21. On June 27, 2014, Roberto filed a motion to dismiss, wherein he stated, among other things, that on the alleged download dates, he did not reside in the home where the Internet connection existed.

22. On July 28, 2014, Roberto provided Malibu Media with his Federal Rule 26(a)(1) Initial Disclosures, which included, among other things, (a) a lease agreement showing

where Roberto resided at the time of the alleged download; (b) a USF Housing Room condition report to show where Roberto resided at the time of the alleged download; (c) and payment and billing receipts showing that Roberto paid for utilities and/or rent at an address other than where the subject IP address was located at the time of the alleged downloads. Roberto also included the names of individuals who could witness that Roberto could not have committed the alleged downloads.

23. On October 2, 2014, Defendant responded to Plaintiff's First Interrogatories with objections that his "home" was not relevant to the lawsuit because he had lived in Tampa for the past two years; with verified responses that his address was in Tampa (Interrogatories 1, 5, 7), that he had never used his computer in the address associated with the IP address (Interrogatory 4), that his "home was not located at the address associated with the IP address under litigation during the period of infringement or for the past two years" (Interrogatories 15, 22), and that he "did not utilize the IP address identified in the lawsuit during the relevant time period." (Interrogatory 17).

24. On November 21, 2014, in response to Malibu Media's First Request for Production of Documents, Roberto

continued to reiterate that he did not reside at the IP address under litigation during the alleged infringement and could not have accessed the IP address to cause the infringement.

25. On January 15, 2015, Roberto provided Amended Answers with Objections to Malibu Media's First Amended Interrogatories, again reiterating that Roberto did not in the past two years live in the address associated with the IP address, did not use any peer-to-peer file sharing program at the St. Petersburg address during the alleged infringement, and did not have knowledge of activities occurring at that address.

26. On January 19, 2015, Roberto moved the court for summary judgment (Doc. 36).

27. On February 10, 2015, the Court entered an order, deferring ruling on Roberto's motion for summary judgment until Malibu Media had an opportunity to depose Roberto and his parents (Doc. 45).

28. On February 19, 2015, after said depositions, Malibu Media moved for leave to substitute the party defendant, therein confirming that Roberto did not have access to the IP address during the alleged period of infringement and could not have committed the downloads (Doc. 53).

29. On February 26, 2015, ruling on Malibu Media's motion, the court permitted Malibu Media to amend its complaint to add Angel Roldan as a defendant, but did not allow Malibu Media to drop Roberto Roldan as a party to this case (Doc. 58).

30. On March 3, 2015, Malibu Media filed its second amended complaint, adding Angel Roldan as a Defendant to this action (Doc. 61).

31. Although Malibu Media continues to list Roberto as a Defendant in the caption of its second amended complaint, it effectively did drop Roberto as a party, as it removed all claims against Roberto.

## COUNT I: ABUSE OF PROCESS

32. Counter-Plaintiff, ROBERTO ROLDAN, incorporates Paragraphs 1 through 31 as if fully pleaded herein.

33. By filing a lawsuit and continuing to litigate against Roberto without sufficient facts to show that Roberto committed any copyright infringement or even resided in the house with the IP address, Malibu Media made an illegal, improper, or perverted use of the civil court system that was neither warranted nor authorized by the process.

34. By failing to seek dismissal of its claim and continuing to keep Roberto as a party Defendant, even after

confirming that Roberto had not committed the infringement, Malibu Media made an illegal, improper, or perverted use of the civil court system.

35. In filing the lawsuit and continuing to litigate against Roberto, Malibu Media has an ulterior motive or purpose, which was to cause Roberto so much money in defense attorney fees that he would be pressured into unjustly paying a settlement to Malibu Media.

36. In failing to seek dismissal of its claims against Roberto, Malibu Media had an ulterior motive or purpose to extort and coerce Roberto into dropping any claim for attorney fees in exchange for the dismissal of claims against Roberto's father Angel.

37. Upon information and belief, Malibu Media's ulterior motive is to maintain Roberto as a Defendant in this case, as required pursuant to court order, yet remove any claim of copyright infringement against Roberto in order that summary judgment cannot be held against Plaintiff.

38. As a result of Malibu Media's abuse of process, Roberto has incurred actual damages, including the costs of defending the lawsuit; injury to his reputation; and lost time in having to defend himself in the lawsuit and respond to discovery. These damages are continuing and ongoing.

**COUNT II: MALICIOUS PROSECUTION**

39. Counter-Plaintiff incorporates Paragraphs 1 through 31 as if fully pleaded herein.

40. A civil judicial proceeding against Roberto was commenced or continued by Malibu Media.

41. Malibu Media was the legal cause of the original proceeding against Roberto as the defendant in the original proceeding.

42. Termination of the original proceeding constituted bona fide termination of that proceeding in favor of Roberto, as Malibu Media has removed Roberto from all claims of copyright infringement and admitted that Roberto is not guilty thereof.

43. There was an absence of probable cause for the original proceeding as Malibu Media lacked sufficient facts to tie Roberto to the alleged infringement and had ample evidence that Roberto did not even reside in the home where the infringements allegedly occurred.

44. There was malice on the part of Malibu Media.

45. Roberto suffered damages as a result of the original proceeding, including the costs of defending the lawsuit; injury to his reputation; and lost time in having to defend himself in the lawsuit and respond to discovery. These damages are continuing and ongoing.

**DEMAND FOR JURY TRIAL**

Defendant, ROBERTO ROLDAN, hereby demands a trial by jury on all issues so triable.

**ATTORNEY'S CERTIFICATE OF SERVICE**

I hereby certify that on **March 24, 2015,** I filed electronically the foregoing with the Clerk of the Court via CM/ECF system which will notify all persons authorized to receive notices of electronic filing.

*Attorneys for Defendant Roberto:*

**Cynthia Conlin, P.A.**
1643 Hillcrest Street
Orlando, Florida 32803-4809
Tel. 407-965-5519/Fax 407-545-4397
www.ConlinPA.com

/s/ Cynthia Conlin, Esq.
[X] CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012
Cynthia@cynthiaconlin.com
[ ] JENNIFER DAWN REED, ESQ.
Florida Bar No. 104986
Jennifer@cynthiaconlin.com
Secondary Email for Service:
Jeff@cynthiaconlin.com