**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| MALIBU MEDIA, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. 8:13-cv-03007-JSM-TBM |
| ) | |
| v. ) | |
| ) | |
| ROBERTO ROLDAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S, MALIBU MEDIA, LLC, OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES WITH INCORPORATED MEMORANDUM OF LAW [CM/ECF 159]**

COMES NOW Plaintiff, Malibu Media, LLC, by and through its undersigned counsel, hereby files its opposition to Defendant's Motion for Attorney's Fees with Incorporated Memorandum of Law [CM/ECF 159], and the Affidavit of attorney fee expert for Plaintiff, Terry M. Sanks, Regarding Reasonableness of Attorneys' Fees in support of this opposition is attached hereto as Exhibit A (hereinafter, the "Sanks Affidavit").

I.  PRELIMINARY STATEMENT

Plaintiff Malibu Media. LLC ("Malibu Media"), initially brought an action for copyright infringement against defendant Roberto Roldan ("Roldan") in April 2014. Thereafter, Plaintiff propounded discovery related to Roldan's infringement, and to uncover greater details regarding Roldan's initial self-serving bare representation in his Motion to Dismiss, and Answer that Roldan did not reside at the address of infringement during the period of infringement.  Indeed, though making only bare assertions to this defense in his initial

1

responsive pleadings, Roldan and his counsel were compiling exculpatory evidence (the "Exculpatory Evidence") early in the case which, if properly disclosed as was the requirement of Fed. R. Civ. P. 26(a), would have led to the early dismissal of Roldan from this lawsuit. Indeed, when the Exculpatory evidence was disclosed to Plaintiff, a stipulation for Roldan's dismissal from the suit followed shortly thereafter. The same would have been the effect if Roldan had reasonably disclosed the Exculpatory Evidence at the beginning of the case as required by Fed. R. Civ. P. 26(a). Instead, Roldan's counsel vexatiously multiplied these proceedings for the clear purpose of incurring a large attorneys' fees bill to attempt to recover from Malibu Media. It should not go unnoticed that Roldan's counsel represented him on a contingency fee basis. Roldan was never going to be on the hook to pay attorneys' fees no matter the outcome. Therefore, Roldan's counsel, the one who would truly benefit from a fee award, clearly vexatiously multiplied these proceedings not for the benefit of Roldan or in the interest of reasonable litigation, but to increase the fees to which she might be entitled. Further, nowhere in any opinion of this court, nor the 11th Circuit, is it opined that Malibu Media's claims were baseless, meritless, vexatious, or conceived in bad faith. Roldan, meanwhile, claims to have expended an enormous sum of money defending against Malibu Media's claim, when it could have been disposed of very early on had Roldan's counsel acted reasonably.

This Honorable Court has held that Roldan is entitled to "some compensation," for attorneys' fees in this matter. *See*, CM/ECF 158 at p. 8. Thereafter, Roldan filed the instant motion seeking an award of costs and attorneys' fees of $130,651.56 ("Roldan's Motion"), which Malibu Media hereby opposes based on the unreasonableness of the amount of billable time spent on a case which should reasonably have been resolved very quickly. Based upon

the facts and law set forth below, Defendant's fee award should be not more than $16,276 to account for time worked through September 2014, and four hours for each attorney and paralegal to have concluded the case. *See,* Sanks Affidavit at ¶¶11-12.

Plaintiff also asks that this Honorable Court consider, and rule upon, Plaintiff's pending Motion for Sanctions which was fully briefed and heard, and which this Court took under advisement for ruling at a later time. Plaintiff suggests Roldan's Motion is the time for this Honorable Court to consider and factor in the Motion for Sanctions (CM/ECF 76) when making any fee award to Roldan.

II.     STATEMENT OF FACTS

Roldan's defense strategy began with a Motion to Dismiss.  *See*, CM/ECF 16. Although the motion conspicuously included only a single sentence in the introduction stating that "[Roldan] did not actually reside in the home where the Internet connection existed for the subject IP address[,]" *Id.* at p. 3-4, the motion did not further discuss this highly relevant issue, nor did Roldan provide any supporting documentation. Roldan's motion also failed to substantiate why his allegations regarding residence could ever warrant dismissal or striking of Plaintiff's complaint. Rather than address applicable legal standards, Roldan "supported" his motion by filing twenty-five (25) pages of argument on unrelated issues, and attached over two hundred and fifty (250) pages of other irrelevant material as exhibits. *See,* CM/ECF 16-1–16-27. Incredibly, Roldan did not cite to the overwhelming majority of the exhibits, underscoring their sheer randomness, irrelevancy and clear purpose of distracting this Honorable Court and disparaging Plaintiff. The Order on the Motion to Dismiss held, "Defendant has not established grounds for dismissal." *See,* CM/ECF 25.

On or about July 28, 2014, Roldan provided a lease and utility bills for a residence 40 minutes away from Angel's home, and submitted his Initial Fed. R. Civ. P. 26(a) disclosures. *See,* CM/ECF 150-1, for a true and correct copy of the Roldan's Initial Disclosures. These disclosures revealed that the only documents which may be used to support his defenses were his lease agreement, his USF Housing Room condition report, and Payment and billing receipts showing that Roldan paid for utilities at his apartment. *Id.* However, since Roldan and Angel both lived in the Tampa/St. Petersburg Metropolitan area Plaintiff suspected that Roldan had been living at both Angel's house and Roldan's nearby college apartment. On August 5, 2014, Roldan filed an Answer wherein he stated that did not reside at Angel's residence during the period of recorded infringement, but again, Roldan failed to provide any documentation establishing that he was not in the home during the dates and times of infringement. *See,* CM/ECF 27, p. 5-6. As such, discovery proceeded. However, had Roldan's counsel provided Exculpatory Evidence at this point Plaintiff's analysis regarding dismissal of Roldan would have been entirely changed. To this point, Roldan's bare self-serving allegations regarding his residence were simply not grounds to warrant Plaintiff's consideration of voluntary dismissal.

During discovery, Plaintiff obtained additional information supporting its belief Roldan was the infringer. In answer to interrogatories, Roldan admitted that he was a BitTorrent user. *See,* CM/ECF 43-1, p. 3. He also stated that he used the BitTorrent client 'uTorrent' to obtain files. *Id*. Significantly, uTorrent is the exact BitTorrent client used by IP address 96.58.134.12 in this case. *See,* CM/ECF 36-2. As such, Roldan's interrogatory responses provided additional evidence supporting Plaintiff's infringement claim.

During this time, unbeknownst to Plaintiff, Roldan was compiling the Exculpatory

4

Evidence including: (1) Roldan's USF class schedule; (2) Roldan's work stubs; (3) Roldan's bank records; (4) Roldan's class syllabi and school transcripts; and (5) two notarized affidavits from Roldan's friends executed in August of 2014. Notably, none of the foregoing was disclosed in Roldan's Fed. R. Civ. P. 26(a) disclosures or proposed pursuant to Roldan's discovery responses.

In a bad faith attempt to increase his fees and protract the litigation, Roldan sat on these documents for months, and only first produced same on January 19, 2015. Indeed, Roldan's own affidavit was notarized well before, on **September 5, 2014**. CM/ECF 37. Further, Roldan's intent to posture this case as a "gotcha" attorneys' fee grab is clear based on Roldan's Counsel's time entries. The time entries in whole may be found at CM/ECF 133-1, but the following selections give this Honorable Court a summary of the defense tactics.

| Date | Timekeeper/Time Description |
|---|---|
| 7/28/2014 | C. Conlin "…finalize Defendant's Initial Disclosures, and serve…Instructions to Legal Assistant to work on Amended Initial Disclosures." |

This first entry begs the question, what needed to be amended immediately following service of the Initial Disclosures?

| Date | Timekeeper/Time Description |
|---|---|
| 8/18/2014 | J. Reed "Begin drafting a motion for summary judgment." |
| 8/19/2014 | J. Reed "Draft affidavit for witness Alexander Biondo attesting to Roberto's residence in Tampa," and "Draft affidavit for witness Affidavit of Christian Harris attesting to Roberto Roldan's residence in Tampa." |
| 8/22/2014 | J. Reed "Draft Affidavit of Roberto Roldan," and "Draft Affidavit for Vinnie Beneduci," and "Continue drafting or working on Defendant's motion for summary judgment." |
| 8/25 & 26/2014 | J. Reed "Continue drafting or working on Defendant's motion for summary judgment." |

Note that at the beginning of this case, August and September of 2014, Ms. Reed spent an

excessive number of hours (over 27 by Plaintiff's counsel's calculation) in actual preparation of a motion for summary judgment and its evidence despite the fact that Roldan had not yet served responses to Plaintiff's first discovery, and the evidence relied upon for summary judgment was not produced in discovery when responses were finally served. Roldan's counsel purposely and improperly withheld that evidence from Plaintiff. By comparison, in the same time frame, Ms. Reed spent less than 7 hours in preparing Roldan's discovery responses.

    8/28/2014    C. Conlin "edit draft of Affidavit of…Roberto Roldan."
    1/20/2015    C. Conlin "Review secure message from Client regarding…his Facebook posts."
    1/20/2015    C. Conlin "Review secure message from Client about ***new, updated*** Facebook screen shots."  (emphasis added)

To be clear, prior to service of Roldan's Motion for Summary Judgment, Roldan produced only his lease, room condition report, and utilities bill.  However, it is clear that Roldan possessed much more than that, which became known to Plaintiff only upon receipt of Roldan's Motion for Summary Judgment.

    2/18/2015    J. Vizcaino "Create initial rough draft of Defendant's Motion to Tax Attorney Fees to Plaintiff."

It cannot be clearer, Roldan and his counsel positioned this case from the beginning as a grab for fees, withheld exculpatory evidence, and vexatiously multiplied the proceedings.

### III.   ARGUMENT

**A.   Many of the legal services referenced in Roldan's Motion were not necessary and the total amount of attorneys' fees sought is well in excess of what this Court should allow.**

The Copyright Act provides that a court may award "a reasonable attorney's fee to the prevailing party . . ." U.S.C.A. sec. 505. The Supreme Court

in *Fogerty v. Fantasy, Inc.*, expressly held that attorneys' fees would be awarded to the prevailing party only at the *discretion of the court* and not as a matter of right. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) (emphasis added). Thus, Plaintiff respectfully requests that this Honorable Court use its discretion to grant Roldan only that amount of fees which would reasonably have been expended to conclude this litigation early on had Roldan's counsel timely submitted Exculpatory Evidence as was her obligation under Fed. R. Civ. P. 26(a).

Further, each attorney admitted in this District Court, and their clients, are subject to Local Rule 2.04(h) which provides in pertinent part that "[a]ttorneys and litigants should conduct themselves with civility and in a spirit of cooperation in order to reduce unnecessary cost and delay." Additionally, the Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida provides at I(D), "Rule 26(e), Federal Rules of Civil Procedure, expressly provides that in many instances a party is under a duty to supplement or correct prior disclosures pursuant to Rule 26(a) or in discovery responses. Fairness and professionalism suggest a broader range of circumstances requiring supplementation." Roldan and Roldan's counsel have clearly ignored the Local Rules and the guidance of this District Court, and withheld Exculpatory Evidence in order to unreasonably multiply costs and create delay in the resolution of this matter. As discussed above, Roldan's counsel represented him on a contingency fee basis. Roldan was never going to be on the hook to pay attorneys' fees no matter the outcome. Therefore, Roldan's counsel, the one who would truly benefit from a fee award, clearly vexatiously multiplied these proceedings not for the benefit of Roldan or in the interest of reasonable litigation, but to increase the fees to which she might be entitled. In this case, such a fee award should be limited to Roldan's counsel's

time through September 2014, plus time to have filed papers to conclude the case against Roldan. *See*, Sanks Affidavit. Roldan's Counsel, self-proclaimed as one of "the most experienced BitTorrent litigation defense attorneys in the country," *see* Roldan's Motion at p. 4, knew that Plaintiff would consider any exculpatory evidence provided and dismiss the case if warranted. A simple e-mail to Plaintiff's counsel attaching the Exculpatory Evidence, and a phone call to discuss the Exculpatory Evidence, could have resolved these issues early in the litigation. However, instead, Roldan's counsel unreasonably multiplied the litigation and delayed resolution by withholding the Exculpatory Evidence and working up fees and costs to the benefit of Roldan's Counsel alone. Such behavior is well outside the rules of civility, the purpose of the Copyright Act, and the Copyright Act's allowance for discretionary fee awards.

A review of Roldan's Motion and supporting exhibits fails in many respects to support that all the requested fees were reasonable. Plaintiff agrees with Roldan that the appropriate methodology in calculating fees is the "lodestar" process -- multiplying the reasonable market rate for the legal services by the number of hours worked. In addition, Plaintiff does not dispute the hourly rates charged by the attorneys involved in this matter. That said, although Plaintiff agrees on the method and rates suggested by Roldan, there are substantial differences relating to the excessive number of total hours charged in this matter.

The record before this Court shows that Malibu Media and its counsel, while not ultimately prevailing at the District Court level, litigated this matter in a professional and reasonable manner. There was no demonstrable bad faith, fraud, malice, or the like. Malibu Media litigated in good faith despite the gamesmanship of Roldan and his counsel. Nowhere in any opinion in this case does it indicate that Malibu Media's claims were frivolous,

vexatious, harassing, or brought in bad faith. In fact, this Honorable Court expressly held that "the Court first concludes that Malibu Media's lawsuit was not frivolous," in its Order on Roldan's entitlement to "some compensation." *See* Order, CM/ECF 158 a p. 5. The issues raised in this litigation were complex, sophisticated intellectual property issues which did not have clear-cut answers, especially in light of Roldan holding back Exculpatory Evidence in order to vexatiously multiply these proceedings.

Moreover, if, in fact, Malibu Media's claims were entirely baseless, and if they had the exculpatory evidence as of September 2014 when Roldan executed his affidavit swearing to the Exculpatory Evidence, why did Roldan amass almost $117,000 worth of attorneys' fees after the Exculpatory Evidence was gathered and affidavits signed in September 2014, by mounting a needless defense when simple disclosure and/or supplementation of disclosure pursuant to Fed. R. Civ. P 26 would have resolved the matter quickly. Just because Malibu Media was ultimately persuaded by Roldan's untimely disclosure of long-held exculpatory evidence that the cost-benefit analysis of continuing the litigation came down on the side of dismissing Roldan, does not automatically translate into an entitlement to costs and attorneys' fees for the entire vexatiously multiplied proceedings. Indeed, Roldan has not cited a single case to support such a presumptuous proposition, any award is discretionary, and there is no such thing as automatic recovery of their entire extraordinarily unwarranted fee amount. *Ivory v. Holme*, No. 8:07-cv-2354-T-TBM, 2010 U.S. Dist. LEXIS 3371, at *3-4 (M.D. Fla. Jan. 15, 2010)("Despite Defendant's representations to the contrary, an award of fees to a prevailing party is not mandated by Section 505. To the contrary, the language of the statute itself makes an award of fees and costs discretionary.")(internal citations omitted); *Yellow Pages Photos,*

*Inc. v. Ziplocal, LP*, No. 8:12-cv-755-T-26-EAJ, 2017 U.S. Dist. LEXIS 125028, at *3-5 (M.D. Fla. Aug. 8, 2017) (In reducing the total fee award to a prevailing party who unreasonably multiplied proceedings, this Honorable Court stated, "As for the reasonable number of hours spent, any hours that are 'excessive, redundant or otherwise unnecessary' should be excluded….This Court still finds that the number of hours spent is excessively high, based on the block billing practices and the contentiousness of the litigation, primarily on the part of [prevailing party's] counsel….The cumulative effect of impeding resolution of issues between counsel, refusing to compromise on insignificant matters, and lacking organization in formulating the theory of the case, only served to disrupt the natural flow and increase hours. It is difficult to precisely calculate the additional hours, given this conduct that permeated the case…..Civility among lawyers working on opposite sides of a case used to be one touchstone of the practice of law. Very early on in this protracted litigation, this Court reminded the attorneys of the obligation of civility, which is embodied in Local Rule 2.04(h) of the Middle District of Florida. In addition to the local rule, the Middle District's Discovery Handbook provides that '[d]iscovery in this district should be practiced with a spirit of cooperation and civility.' …It is in this context of lack of civility in which the issue of reasonable hours expended arises.")(internal citations omitted). This matter should reasonably have concluded with Roldan's counsel expending under $17,000 in fees to resolve the matter. *See*, Sanks Affidavit at ¶¶11-12.

It is clear that "each case will turn on its own particular facts and equities." *Fantasy, Inc. v. Fogarty*, 94 F.3d at 560. Here, the applicable facts and equities at play do not call for the extraordinary imposition of attorneys' fees requested by Roldan. Roldan has utterly failed

10

to show how his vexatious multiplication of fees, and an award of the entire amount of those attorneys' fees, in this case will further the purposes of the Copyright Act. The *Fantasy* Court makes clear that there are no "compulsory fee awards to prevailing copyright defendants: copyright claims do not . . . always implicate the ultimate interests of copyright; . . . the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff . . ." *Id.*

While this Court has held that "some compensation" is to be awarded to Roldan, Plaintiff argues, and its expert confirms, that this Honorable Court should exercise its discretion, and any award should be limited to the reasonable amount of work that was completed through September 2014 at which time had Roldan and his counsel acted reasonably in complying with Fed. R. Civ. P. 26, and the Local Rules, the Exculpatory Evidence would have been disclosed to Plaintiff and Roldan would have been dismissed from the lawsuit shortly thereafter (as was the case when the Exculpatory Evidence was eventually disclosed months later). Such a limited award also promotes the purpose of the Copyright Act, as Plaintiff brought a non-frivolous lawsuit to protect its copyrights and a large fee award serves to reward Roldan who unreasonably multiplied litigation, and punishes Plaintiff who brought and prosecuted its copyright claim in good faith.

Further, had such reasonable action taken place, or had Roldan's counsel reasonably objected to a dismissal without prejudice at the hearing on April 24, 2015, there would have been no need for an appeal, therefore no appellate fees should be awarded in this matter. *See*, Order at CM/ECF 98 p. 2 ("On April 27, 2015, this Court entered an order which: (1) dismissed Roberto Roldan as a party to this action based on the Plaintiff's counsel's agreement to dismiss

11

him without prejudice on the condition that his testimony proves truthful….Ms. Conlin [Roldan's Counsel] made no objections to the Court's ruling at the time of the hearing.")

## IV.   THE PENDING MOTION FOR SANCTIONS

Since it is "not customary to represent a defendant in copyright litigation under a contingency fee arrangement, before any fee is awarded to Defendant, the Motion for Sanctions [against Defendant], (Dkt. 76), which was taken under advisement by the Court. Should also be factored into any fee decision." *See,* Sanks Affidavit at ¶10. Roldan's Motion suggests that this Court determined Plaintiff's pending Motion for Sanctions (CM/ECF 67) was "unfounded." This is a clear misrepresentation made by Defense counsel. This Honorable Court's Order [CM/ECF 98], entered June 4, 2015, clearly states that "[t]he Court has taken the Motion for Sanctions under advisement and will consider its merits at a later date." Plaintiff respectfully requests that the Motion for Sanctions be considered in making any fee award to Roldan, and requests that this Court consider the merits of the Motion for Sanctions when making its fee award and also make a ruling on the Motion for Sanctions. *See*, Sanks Affidavit at ¶10.

## V.   CONCLUSION

For all of the foregoing reasons, plaintiff respectfully requests that this Honorable Court deny Roldan's' motion for costs and attorneys' fees as requested, grant Plaintiff's Motion for Sanctions, and enter an order, if any, awarding not more $16,276 to Defendant to account for Roldan's counsel's time worked through September 2014, and four hours for each of Roldan's attorneys and paralegals to have concluded the case. *See,* Sanks Affidavit at ¶¶11-12.

Dated: April 11, 2019          Respectfully submitted,

By: /s/ Lorri Lomnitzer
Lorri Lomnitzer
Florida Bar No.: 37632
Lorri@Lomnitzerlaw.com
Spensyr Ann Krebsbach
Florida Bar No.: 085132
THE LOMNITZER LAW FIRM, P.A.
7999 N. Federal Highway, Suite 200
Boca Raton, FL 33487
Telephone: (561) 953-9300
Direct: (561) 953-9301
Fax: (561) 953-3455
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 11, 2019, a true and correct copy of the foregoing, Plaintiff's Opposition to Defendant's Motion for Attorney's Fees with Incorporated Memorandum Of Law [CM/ECF 159], was filed with the Clerk of Court using the CM/ECF system and served on all of those parties receiving electronic notification via the Court's CM/ECF electronic filing system.

By:   /s/ *Lorri Lomnitzer*
Lorri Lomnitzer
Florida Bar No.: 37632
Lorri@Lomnitzerlaw.com